#3129317#　　5/18/2015　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　2015N-0069

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MARK MENDELSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALLSTON TRADING, LLC and JOHN DOES NOS. 1 - 10,<br><br>　　　　Defendants. | No.<br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT AT LAW

Plaintiff Mark Mendelson ("Plaintiff"), by his undersigned attorneys, states his Complaint against the above-named defendants ("Defendants"), as follows:

### SUMMARY OF THE COMPLAINT

This action concerns the manipulation of price in the United States Treasury futures markets. The U.S. Treasury futures markets trade at the Chicago Board of Trade ("CBOT"). CBOT Treasury futures are standardized contracts for the purchase and sale of United States government bonds and notes. Since 2011, Defendants, Allston Trading, LLC and one or more of John Does Nos 1 - 10, have engaged in an unlawful market activity in the Treasury futures markets called "spoofing." Among other things, spoofing causes price movements that are the result of the unlawful manipulation of the market and not the result of supply and demand. Spoofing enabled Defendants to manipulate the price of Treasury futures to Defendants' advantage and to the disadvantage of the Plaintiff and other traders in the Treasury futures markets. Plaintiff seeks recovery of damages to which he is entitled as a result of the Defendants'

5. John Does Nos. 1-10 are traders and trading firms, currently unidentified, who purchased 5-year, 10-year and 30-year Treasury futures contracts at the CBOT and the CME. John Does Nos. 1 - 10 engaged in the practice of spoofing the market for Treasury futures contracts at the CBOT and the CME during the years 2011 through the present.

6. From 2011 through the present, Defendants traded Treasury futures contracts on the CME Globex trading platform. Since trading on the Globex platform is anonymous, Plaintiff knows neither the identity of the John Doe Defendants nor the number of John Does. While Plaintiff believes that Allston is responsible for most of the spoofing alleged in this case, allegations concerning the Defendants' entries of orders are made on information and belief. Since the Defendants are persons or entities that trade on the CBOT through the CME Globex trading platform, the CME Group has the unique operator identification information that will enable the CME to identify the entities and/or persons that are responsible for the spoofing alleged herein. Upon the CBOT's and/or the CME's disclosure of the identities of the Defendants during the discovery process, Plaintiff will seek leave to amend the Complaint and identify the John Does.

7. Spoofing is an unlawful activity which is prohibited by the Commodities Exchange Act, 7 U.S.C. § 6c (a)(5)(C). Spoofing refers to trading activity involving "bidding or offering with the intent to cancel the bid or offer before execution." Id.

8. The purpose of spoofing is to deceive market participants about the direction in which the market is moving. The spoofer does so by placing false orders to buy (i.e., bid), or to sell (i.e., offer), which mislead traders about actual supply and demand conditions in the market. False orders to sell give the impression that the prices of the affected futures contracts are

unlawful activity.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337, and 7 U.S.C. §§ 1 et seq., and Section 22 of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1a(4) and 25.

2. Venue is proper pursuant to 28 U.S.C. § 1391(a) and (b) and 7 U.S.C. § 25(c), because Defendants reside in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district.

## ALLEGATIONS COMMON TO ALL COUNTS

3. Plaintiff, Mark Mendelson, is an individual residing in the Northern District of Illinois. From 2011 through the present, Plaintiff purchased and/or sold 5-year, 10-year, and 30-year Treasury futures contracts at the Chicago Board of Trade ("CBOT"), which is a subsidiary of the CME Group, Inc. ("CME").

4. Defendant Allston Trading, LLC ("Allston") is a trading firm that is headquartered in Chicago, Illinois. From 2011 through the present, Allston purchased and sold 5-year, 10-year and 30-year Treasury futures contracts at the CBOT. On information and belief, and as hereinafter alleged, Allston was engaged in the practice of spoofing the market for Treasury futures contracts from January 1, 2011 through the present. Allston is being investigated for spoofing conduct by the Commodity Futures Trading Commission ("CFTC").[1]

---

[1] http://www.bloomberg.com/news/articles/2015-03-31/allston-said-to-face-cftc-investigation-for-alleged-manipulation

2

declining; and, false orders to buy mislead the trader into believing that the prices of the affected futures contracts are rising.

9. Operating in a trading environment where high speed computers are programmed to make bids or offers and have trades executed in thousandths of a second, the Defendants used a combination of automated algorithmicaly driven, computerized trading and some level of human intervention, to systematically deploy spoofing strategies in the CME's Globex electronic trading platform for Treasury futures contracts.

10. In connection with a CME arbitration proceeding in which HTG Capital Partners LLC alleged that Allston had been engaged in spoofing the market, an analysis was performed of trading activity during the period from January 1, 2013, through August 29, 2014 (hereinafter "Analysis").

11. The Analysis revealed that there were 6790 instances of spoofing during the period from January 1, 2013 through August 29, 2014. The trading data that was the basis for the Analysis is attached hereto at Exhibit A and Exhibit B.

12. The spoofing had three distinct phases. First, the Defendants placed numerous large deceptive orders at prices that would give the false impression to all other traders and market participants that there was volume and interest at these prices ("build-up phase"), and that the market was moving in a certain direction. The appearance of volume at these prices attracted other market participants who placed orders believing that their orders would be executed in a manner consistent with the displayed deceptive orders.

13. Second (the "cancel phase"), the Defendants acted to prevent the large deceptive buy or sell orders from being filled in two ways. Because orders placed on the Globex platform

4

were filled on a first-in-first-out basis, the Defendants simply cancelled the deceptive orders before the orders got to the head of the queue. Also, if a deceptive order was getting close to the front of the queue, the Defendants caused the deceptive order to be moved to the back of the queue by modifying the order.

14. Third, Defendants "flipped" the market (the "flip phase") with the cancellation of the deceptive orders. The Defendants entered orders taking the other side of the price movement that they had instigated by the placement of their initial deceptive orders. Consequently, the Defendants profited by selling their contracts at prices that were artificially higher than the market price, or by purchasing contracts at prices that were artificially lower than the market price.

15. The Analysis revealed that the Defendants' spoofing was done in the Treasury futures markets for the 5-year treasury futures contracts, the 10-year Treasury futures contracts, and the 30-year treasury futures contracts.

16. For example, on December 6, 2013, in the 5-Year U.S. Treasury futures market (ticker symbol ZFH4), one of the Defendants entered 5 orders to sell ZFH4 at the price of 120 6.5/32 in 24 milliseconds (i.e., the "build-up"). The Defendant then canceled all of its sell orders and simultaneously entered an order to buy 784 contracts at the same price (i.e., the "flip"). The CME Globex platform then matched traders' pending ZFH4 sell orders against the Defendant's buy (flip) order, leaving the orders of the traders holding a short position in a market poised to

5

rise due to the manipulation by the Defendants. When the market rose, the traders holding short positions suffered losses.[2]

17. Similarly, on January 9, 2014, in the 10-Year U.S. Treasury futures market (ticker symbol ZNF4), one of the Defendants built up the buy side of the order book by entering at least 5 orders to buy ZNH4 contracts at the price of 123 2/32 in 38 milliseconds (i.e., the "build-up"). The Defendant then canceled all of the buy orders and simultaneously entered an order to sell 1,134 ZNH4 contracts at the same price (i.e., the "flip"). The CME Globex platform matched the buy orders of traders' pending ZNH4 contracts against the Defendant's sell order, leaving the traders holding a long position in a market poised to fall due to the manipulation of the market by the Defendants. When the market fell, the traders holding long positions suffered losses.

18. Similarly, on August 27, 2014, in the 30-Year U.S. Treasury futures market (ticker symbol ZBU4) one of the Defendants built up the sell side of the order book by entering at least 8 orders to sell ZBU4 at the price of 140 17/32 (i.e., the "build-up"). Defendant then canceled all of the sell orders and simultaneously entered an order to buy 573 contracts at the same price (i.e., the "flip"). The CME Globex platform matched the pending sell orders of other traders against the Defendant's buy order, leaving the other traders in a short position in a market poised to rise due to the manipulation by the Defendants. When the market rose, the traders holding short positions suffered losses.

19. On information and belief, the Defendants' spoofing activities date back to 2011.

---

[2] The examples of spoofing alleged in paragraphs 15, 16 and 17 were alleged in the complaint filed in *HTG Capital Partners LLC v. John Doe(s)*, No. 15 - civ -2129 (N. D. Ill., March 10, 2015), at 7 - 16.

## Count I

### Violations of the CEA: Disruptive Practices

20.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 19, as if fully set forth herein.

21.     Under the CEA, 7 U.S.C. § 6c, spoofing is a prohibited disruptive practice defined as, "bidding or offering with the intent to cancel the bid or offer before execution."

22.     Defendants intentionally engaged in a systematic and consistent pattern of spoofing activity during the years 2011 through the present.

23.     Defendants' actions constitute market manipulation of prices in the CME and CBOT's Treasury futures markets.

24.     Defendants' spoofing was willful and intentional in that the spoofing was accomplished through the use of high speed computers programmed to enter deceptive orders, then cancel the orders and simultaneously flip the market to the advantage of the Defendants.

25.     Defendants' spoofing activities in the markets for Treasury futures contracts caused actual damages to the Plaintiff in that Plaintiff bought Treasury futures contracts at artificially higher prices than actual market prices due to the Defendants' spoofing, and Plaintiff sold Treasury futures contracts at artificially lower prices than actual market prices due to the Defendants' spoofing.

26.     Defendants' willful and intentional actions in violation of the CEA entitle Plaintiff to recover actual and punitive damages.

WHEREFORE, Plaintiff, Mark Mendelson, respectfully requests that this Honorable Court enter judgment in favor of Plaintiff, Mark Mendelson, and against the Defendant, Allston

Trading, LLC, and Defendants, John Does Nos. 1 - 10, for actual damages in an amount in excess of $200,000, and punitive damages in an amount not to exceed two times actual damages, plus costs and interest as provided by law.

## Count II

### Violations of the CEA and CFTC Rule 180.1: Manipulation

27. Plaintiff repeats and realleges each and every allegation contained in the paragraphs 1 through 19, as if fully set forth herein.

28. The CEA, and CFTC Rule 180.1, expressly prohibit manipulation making it "unlawful for any person directly or indirectly, to use or employ, or attempt to use or employ…any manipulative device or contrivance… ." 7 U.S.C. §9; 17 C.F.R. 180.1 (a)(1) (Unlawful intentionally or recklessly to "[u]se or employ, or attempt to use or employ, any manipulative device" in connection with any contract of sale of any commodity or contract for future delivery.).

29. The CEA, as amended by §753 of the Dodd-Frank Wall Street Reform Act and Consumer Protection Act, authorizes a private right of action against parties who employ "any manipulative device or contravention of such rules and regulations as the Commission [i.e., the CFTC] shall promulgate or…any manipulation of the price of such contract or swap or the price of the commodity underlying such contract or swap." 7 U.S.C. § 25(a)(1)(D).

30. Defendants' actions in systematically and consistently employing deceptive orders to create false price movements and taking advantage of those price movements constituted a scheme of deliberate market manipulation in violation of the CEA and CFTC Rule 180.1.

8

31. Defendants' deliberate market manipulation caused actual damages to the Plaintiff in that Plaintiff bought Treasury futures contracts at artificially higher prices than actual market prices, and he sold Treasury futures contracts at artificially lower prices than actual market prices.

32. Defendants' violations of the CEA were intentional and wilful acts for which the Plaintiff is entitled to recover actual damages and punitive damages.

WHEREFORE, Plaintiff, Mark Mendelson, respectfully requests that this Honorable Court enter judgment in favor of the Plaintiff, Mark Mendelson, and against the Defendant, Allston Trading, LLC, and Defendants, John Does Nos. 1 - 10, for actual damages in an amount in excess of $200,000, and punitive damages in an amount not to exceed two times actual damages, plus costs and interest as provided by law.

## Count III

### Violations of CEA and CFTC Rule 180.2: Manipulation

33. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 19 as if fully set forth herein.

34. CFTC Rule 180.2 prohibits actions undertaken with a specific intent to manipulate the futures contracts market.

35. In determining whether there has been price manipulation prohibited by CFTC Rule 180.2 and CEA Sections 6(c) and 9(a)(2), CFTC Rule 180.2 focuses on four factors: (a) whether the offender has the ability to influence market prices; (b) whether the offender specifically intended to create or effect a price or price trend that would not reflect legitimate

9

forces of supply and demand; (c) whether artificial prices existed; and (d) whether the offender caused the artificial prices.

36. The Defendants' spoofing activities met the criteria set forth in CFTC Rule 180.2:

    a. Defendants had the ability to influence prices by the placement of large deceptive orders to buy, or to sell, Treasury futures contracts which the Defendants had no intention to execute;

    b. Defendants specifically intended to create or effect an artificial price or a price trend that would not reflect legitimate forces of supply and demand, but instead reflected the effect of deceptive orders to buy or to sell Treasury futures contracts that would be canceled before execution;

    c. Artificial price levels existed in the CBOT's markets for the 5-year, 10-year, and 30-year Treasury futures contracts at various times from 2011 through the present date;

    d. On information and belief, the Defendants' actions in spoofing the markets caused artificial price levels in the CBOT's markets for the 5-year, 10-year, and 30-year Treasury futures contracts from 2011 through the present date.

37. Defendants' actions were wilful and intentional in systematically and consistently employing deceptive orders to create false price movements and taking advantage of those price movements.

38. Defendants caused actual damages to the Plaintiff in that Plaintiff bought Treasury futures contracts at artificially higher prices than actual market prices; and Plaintiff sold Treasury futures contracts at artificially lower prices than actual market prices.

39. Defendants' wilful and intentional actions in violation of the CEA and CFTC Rule 180.2 entitle Plaintiff to recover actual and punitive damages.

WHEREFORE, Plaintiff, Mark Mendelson, respectfully requests that this Honorable Court enter judgment in favor of the Plaintiff, Mark Mendelson, and against the Defendant, Allston Trading, LLC, and Defendants, John Does Nos. 1 - 10, for actual damages in an amount in excess of $200,000, and punitive damages in an amount not to exceed two times actual damages, plus costs and interest as provided by law.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Respectfully submitted,

/s/René A. Torrado, Jr.
René A. Torrado Jr.


Of Counsel:

René A. Torrado, Jr (ARDC No. 3129317)
Matthew Jenkins (ARDC No. 3120317)
**CORBOY & DEMETRIO, P.C.**
33 North Dearborn, Suite 2100
Chicago, Illinois 60602
(312) 346-3191

R. Tamara de Silva (ARDC No. 6244445)
**LAW OFFICES OF R. TAMARA DE SILVA**
980 N. Michigan Avenue, Suite 1400
Chicago, Illinois 60611
rtamaradesilva@uchicago.edu
(312) 810-8100
Attorneys for Plaintiff Mark Mendelson